# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PEIERLS FOUNDATION INC. and
E. JEFFREY PEIERLS, individually and as trustee for Under Deed Ethel F. Peierls for Brian E. Peierls, Under Deed Ethel F. Peierls for E. Jeffrey Peierls, Under Deed Edgar S. Peierls for Ethel F. Peierls et al., Under Deed Jennie N. Peierls for Brian E. Peierls, Under Deed Jennie N. Peierls for E. Jeffrey Peierls, Under Will Jennie N. Peierls for Brian E. Peierls, and Under Will Jennie N. Peierls for E. Jeffrey Peierls

       Plaintiffs,

v.

JAMES E. RURKA,
MARK SKALETSKY,
PAUL J. MELLETT,
RICHARD ALDRICH,                  Civil Action No. 0312213EFH
KATE BINGHAM,
CHARLES W. NEWHALL III,
DAVID SCHNELL,
JOHN P. WALKER,

       Defendants.

**PLAINTIFFS' SURREPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs (collectively, "the Peierls") respectfully submit this Surreply Memorandum in Opposition to Defendants' Motion to Dismiss, stating as follows:

## I. INTRODUCTION

In their Reply Memorandum in Support of Defendants' Motion to Dismiss ("Reply"), Defendants rehash the same faulty arguments from their Motion to Dismiss ("Motion"). They again fail to address the fact that they characterized the Series B preferred stock as "equity" in Essential's public filings, even though the Series B preferred stock was not "equity" for purposes of Nasdaq's requirements or for financial reporting purposes. Furthermore, Defendants wrongly insist that this Court should decide disputed questions of fact without the parties having conducted any discovery, including the disclosure of expert witnesses, to shed additional light on how and why these statements and omissions were incomplete and inaccurate, the reasonableness of the Peierls' reliance on these misleading statements and omissions, how the price of Essential's stock was affected by these misleading statements and omissions when the Peierls purchased it, and the fact that the Peierls were not on inquiry notice for the purpose of triggering the statute of limitations.

## II. THE COMPLAINT STATES A CLAIM UNDER SECTION 18

Without explicitly stating it, Defendants incorrectly imply that the Court should construe the allegations in the Complaint against the Peierls. This implication is contrary to law, which requires the Court to "assume the well-pleaded facts as they appear in the complaint to be admitted, indulging every reasonable inference in favor of the non-moving party." *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 53 (D. Mass. 1995).

**A.     *Defendants' Statements in Essential's SEC Filings Were False and Misleading***

      **1.     Mischaracterization of Series B Preferred Shares as "Equity" in Essential's Form 10-K Dated March 29, 2002**

Defendants incorrectly assert that they made no misleading statements in any SEC filings based on their presentation of the 60,000 shares of Series B preferred stock on the balance sheet accompanying Essential's Form 10-K dated March 29, 2002. Their assertion is flawed for several reasons.

First, the 60,000 shares of Series B preferred stock *was not clearly excluded* from "Stockholders' equity" on the Form 10-K balance sheet. The very first line-item in the category "Stockholders' equity" specifically *included* the 60,000 shares of Series B preferred stock:

```
Stockholders' equity:
  Preferred stock, par value $0.001; 5,000,000 shares authorized; 60,000 Series B shares issued
    and outstanding.................................................................    --       --
  Common stock, par value $0.001; 50,000,000 shares authorized, 16,752,723 and 11,410,847
    shares issued and outstanding at December 31, 2001 and 2000, respectively........    17       12
  Additional paid-in capital.......................................................  99,800   68,471
  Deferred compensation............................................................  (2,692)    --
  Notes receivable from stockholders...............................................    (231)    --
  Accumulated deficit..............................................................  (81,113) (53,188)
  Accumulated other comprehensive income...........................................    --       29
                                                                                     -------  -------
      Total stockholders' equity...................................................  15,781   15,324
                                                                                     -------  -------
                                                                                    $ 78,044 $ 27,198
                                                                                    ======== ========
```

(Motion Ex. D at F-3 (emphasis added).) This inclusion demonstrates, by itself, how Defendants' characterization of the 60,000 shares of Series B preferred stock as "equity" was misleading.

Second, later in this Form 10-K, Defendants specifically refer to the $60 million received from the sale of those 60,000 shares of Series B preferred stock as "equity financing" and "private equity funding." (*Id.* at 27, 31, F-7, F-16 to -18.) The note discussing "Stockholders' Equity" stated as follows:

> 8. STOCKHOLDERS' EQUITY
>
> PREFERRED STOCK
>
> The Company is authorized to issue 5,000,000 shares of preferred stock. The Company's Board of Directors may set rights and privileges of any preferred stock issued. In October 2001, the Company issued 60,000 shares of Series B convertible redeemable preferred stock in a private equity financing (see Note 7).

(Motion Ex. D. at F-18.) The Form 10-K never disclosed that this $60 million would not count as "equity" for Nasdaq listing purposes.

Third, before Essential filed this Form 10-K, the Peierls read and relied on at least three SEC filings made by Defendants that simply referred to the Series B preferred stock as "equity" without any purported exclusion from "stockholders' equity." (Complaint ¶¶ 19-21; Motion Exs. A, B, C.) These filings do not discuss the computation of "stockholders' equity" or any potential distinction between "equity" and "stockholders' equity." (Complaint ¶¶ 22-24.) Without explanation, Defendants suggest that because the price of Essential stock increased between the Peierls' initial purchases of Essential stock in reliance on these three filings and the filing of the Form 10-K, their statements about the nature of the Series B preferred stock were somehow not misleading. (Reply at 3.) Defendants wrongly assume that the statements in the Form 10-K were accurate and should have alerted the Peierls to any inaccuracy in the earlier filings. On the contrary, the Form 10-K was itself misleading. Moreover, the increase in Essential's stock price actually reinforces the Peierls' point that the statements were misleading because the market was reflecting the inaccurate information from the Form 10-K and Essential's earlier SEC filings in the form of inflated prices that crashed once the true nature of these shares was revealed and the delisting of Essential from the Nasdaq became imminent.

Defendants apparently are arguing that the Peierls failed to mitigate their damages by not selling their Essential shares at their peak. Mitigation of damages has no application here. The

Peierls had no duty to sell their shares at the peak trading price because they had not yet discovered the inaccuracy of Defendants' statements and omissions. *SEC v. MacDonald*, 699 F.2d 47, 53 (1st Cir. 1983) (discovery of wrongdoing triggers any duty to mitigate). Moreover, resolving the issue of whether the Peierls mitigated their damages involves a question of fact that is not properly decided at this stage of litigation. *See Millen Indus., Inc. v. Flexo-Accessories Co.*, 4 F. Supp. 2d 72, 75 (D. Mass. 1999) ("[W]hether a plaintiff has taken reasonable steps to mitigate its damages is a question of fact which should not be resolved [before trial]."); *Hussey v. Holloway*, 104 N.E. 471, 473 (Mass. 1914).

### 2. Failure to Disclose that Series B Preferred Shares Would Not Count Toward Nasdaq Listing Requirements

Defendants admit, as the Peierls alleged, that they failed to disclose that the Series B preferred stock would not count toward Nasdaq's minimum equity thresholds: "There is no statement in the Form 10-K or other filings that the Series B preferred stock was relevant to the satisfaction of the Nasdaq listing requirements." (Motion at 8; Complaint ¶ 3.) Defendants now assert that they had no duty to disclose the fact that the $60 million would not count toward "Stockholders' Equity" for Nasdaq listing purposes.[1] They ignore the fact that they made earlier misleading representations about the nature of the $60 million Series B preferred stock in Essential's Form 8-K filed on August 3, 2001, Form 8-K filed on November 8, 2001, and Form 10-Q filed November 14, 2001, as well as in Essential's Form 10-K, explicitly stating that it was "equity financing" and "private equity funding." They made these misleading statements without any indication that this Series B preferred stock may not be considered stockholders' equity on Essential's balance sheet, *see* 17 C.F.R. § 210.5-02(28)(d), and would not count toward

---

[1] In support of their argument, Defendants again rely on the cases cited in their Motion and incorrectly assert that the Peierls ignored those cases. (Reply at 4-5.) Contrary to ignoring those cases, the Peierls distinguished each one. (Opposition at 11-12.)

Nasdaq listing requirements. Defendants thus made it impossible to determine how the Nasdaq listing requirements would apply, thereby disguising both the danger that Essential would be delisted and the financial instability of Essential. Accordingly, Defendants had a duty to disclose the true nature of the Series B preferred stock. *See In re PLC Sys., Inc. Sec. Litig.*, 41 F. Supp. 2d 106, 115-16 (D. Mass. 1999) ("'[W]hen a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate.'") (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990)). Defendants failed in this duty.

### 3. Forward-Looking Statements

With regard to the safe-harbor provision of 15 U.S.C. § 78u-5, the Peierls demonstrated that it does not apply to Defendants' statements that Essential's stock would continue to trade on Nasdaq and that the $60 million from the Series B preferred stock provided Essential with sufficient funds to operate through at least 2003. (Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") at 12-14.) The Peierls further explained how and why these statements were misleading. (*Id.*)

### B. *The Peierls Sufficiently Pleaded Their Reasonable Reliance*

Defendants' Reply restates the same flawed argument that they presented in their Motion, contending that their statements were so confusing that no one should have relied on them. In their Opposition, the Peierls fully explained the allegations in their Complaint showing that they reasonably relied on Defendants misleading statements and omissions in making their purchases of Essential stock. (*Id.* at 14-16.) Their allegations of reliance are sufficient to withstand a motion to dismiss. *See Linder Dividend Fund, Inc.*, 880 F. Supp. at 56.

The cases cited in Defendants' Reply purportedly supporting their argument do not apply. Unlike the circumstances here, those cases did not involve reliance on statements in a company's public filings with the SEC that are supposed to be complete and accurate, not full of

5

inconsistencies. In *Foremost Guarantee Corp. v. Meritor Savings Bank*, 910 F.2d 118 (4th Cir. 1990), insurance companies claimed that they were fraudulently induced to issue insurance policies based on *oral* statements made by the defendants that were contrary to written statements in documents possessed by the insurance companies. *Id.* at 123. Likewise, in *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020 (2d Cir. 1993), the plaintiffs premised their claims on *oral* representations of a broker that were contrary to the company's prospectus. *Id.* at 1032-33.

### C. The Peierls Sufficiently Pleaded that They Purchased Essential Stock at a Price Affected by Defendants' Misrepresentations and Omissions

Defendants reiterate the same faulty contention from their Motion that the Peierls' purchases of Essential stock were not at a price affected by Defendants' misrepresentations. The Peierls pleaded that "[t]he price that Plaintiffs paid for Essential stock was affected by Essential's false or misleading statements" and explained precisely how the price was artificially inflated by Defendants' misrepresentations and nondisclosures. (Complaint ¶ 32.) Once the truth was fully revealed, the market gradually assimilated this information, and the stock price began to drop. *See In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 338 & n.12 (D. Mass. 2002).

Defendants' argument completely ignores these allegations, instead maintaining that their misstatements and omissions were not misleading and therefore could not have affected Essential's stock price. As demonstrated above and in the Opposition, Defendants' contention that they made no misstatements or omissions is a fact question.

### D. The Peierls' Claims Are Not Barred by the Statute of Limitations

#### 1. Sarbanes-Oxley Extended the Limitations Period to Two Years

The plain language of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 1658, extends the limitations period that applies to the Peierls' Section 18 claims to two years. § 1658(b) provides:

[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of -- (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.

15 U.S.C. § 17c(a)(47) explicitly identifies the entire Securities Exchange Act, including Section 18, in defining "securities laws." One commentator explained the application of this limitations period to Section 18 claims as follows:

The new limitations period does not contain an exception for acts of Congress with their own limitations periods. Thus, if one of the express causes of action involves a claim of fraud, deceit, manipulation, or contrivance, two statutes of limitations will apply to it -- the express provision of the federal securities laws and 28 U.S.C. § 1658(b). This appears to be the case for at least . . . *misleading statement claims under section 18* . . . .

Michael A. Perino, *Enron's Legislative Aftermath: Some Reflections on the Deterrence Aspects of the Sarbanes-Oxley Act of 2002*, 76 St. John's L. Rev. 671, 693 (2002) (emphasis added) (footnotes omitted).

### 2.  The Peierls' Claims Are Not Barred under Section 18(c)

Even if a one-year statute of limitations applied to the Peierls' claims rather than the two-year statute under Sarbanes-Oxley, Defendants have not established that "the pleader's allegations leave no doubt that an asserted claim is time-barred." *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

Defendants incorrectly assert that the drop in the price of Essential's stock placed the Peierls on inquiry notice that Defendants' statements and omissions were misleading. "A steep decline in the price of a stock cannot without more be considered evidence of fraud sufficient to start a statute of limitations running." *Lasalle v. Medco Research, Inc.*, 54 F.3d 443, 446 (7th Cir. 1995); *see also La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 849 (11th Cir. 2004) (declining "the invitation to adopt a bright-line rule that a certain price drop within a certain period of time constitutes inquiry notice as a matter of law"). This rule applies especially "in the

rapidly changing, highly competitive pharmaceutical industry." *Lasalle*, 54 F.3d at 446. A price drop does not constitute inquiry notice because an investor may initially attribute the decline to any number of factors aside from fraud, including a general bear market or recession.[2] *See La Grasta*, 358 F.3d at 846-47.

Even if the drop in Essential's stock price put the Peierls on inquiry notice, the Peierls have pleaded facts showing that they exercised reasonable diligence. (Complaint ¶ 26.) The Peierls alleged that they read numerous press releases between the filing of the March 29, 2002 Form 10-K and the Peierls' discovery of Defendants' wrongdoing. (*Id.*) Moreover, the short timeframe between the date of July 2002 press release and Jeff Peierls' discovery of Defendants' fraud in the November 2002 press release was not an unreasonable amount of time in which to make this discovery. *See Young*, 305 F.3d at 10. The resolution of these issues at this stage of the proceedings, and in light of the allegations of the Complaint, would be premature.[3]

---

[2] The cases cited by Defendants in support of this assertion are inapposite. In *Abelson v. Strong*, 644 F. Supp. 524 (D. Mass. 1986), the company was involved in the oil and gas business, and not the pharmaceutical industry at issue here, and the plaintiffs there failed to allege that they exercised reasonable diligence in discovering the defendants' fraud. *See id.* at 526, 532. Contrary to Defendants' contention, *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165 (D. Mass. 1997), does not stand for the far-reaching proposition for which they cite it. There, the court only held that the plaintiffs were on inquiry notice from the time that they sold their stock at a depressed price, and not because of a drop in price alone. *Id.* at 171.

[3] Defendants' reliance on *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148 (2d Cir. 2003), is misplaced because the facts there have nothing to do with the circumstances that Defendants claim placed the Peierls on inquiry notice. In *LC Capital Partners*, the court held that the plaintiffs were on inquiry notice as a result of (1) the company making three unusual "reserve charges" in the span of four years, (2) the publication of an article in the *National Underwriter* discussing the reserve problems, and (3) the filing of another lawsuit over five and half years earlier involving the first reserve charge. *Id.* at 155.

## III. CONCLUSION

Defendants' Reply adds nothing to their Motion. Accordingly, the Motion should not be granted.

Respectfully submitted,

By: _____
David E. Marder (BBO # 552485)
Lisa A. Furnald (BBO #631059)
Robins, Kaplan, Miller & Ciresi L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA 02199
617-267-2300
Susan Bernhardt (Colo. Attorney Reg. # 20369)
Netzorg McKeever Koclanes & Bernhardt LLC
1670 Broadway, Suite 500
Denver, CO 80202
303-864-1000

Dated: March 26, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2004, a true and correct copy of the above and foregoing was served via facsimile and first class mail, postage prepaid to: Steven W. Hansen, Esq. and Matthew C. Applebaum, Bingham McCutchen LLP 150 Federal Street Boston, MA 02110.

_____
Lisa A. Furnald